# Arnold & Porter

**Kent A. Yalowitz**
+1 212.836.8344 Direct
Kent.Yalowitz@arnoldporter.com

August 13, 2021

**BY ECF**

Hon. George B. Daniels
United States District Court
 for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

> Re:    *Sokolow et al. v. Palestine Liberation Organization et al.*
>          No. 04 Civ. 397 (GBD) — Supplemental Information on Pending Matter

Dear Judge Daniels:

I write to provide certain information that was unavailable at the time of oral argument.

**First**: On July 23, 2021, the United States intervened and filed a memorandum of law in *Fuld v. Palestine Liberation Org.*, No. 20 Civ. 3374 (JMF) (S.D.N.Y. July 23, 2021) [ECF 53]. The United States argues that "Section 2334(e) is consistent with the Constitution and should be upheld." *Id.* at 2. I enclose a courtesy copy.

**Second**: On July 8, 22, and 23, 2021, the plaintiffs in *Shatsky v. Palestine Liberation Org.*, No. 18 Civ. 12355 (MKV), deposed employees of the PLO and PA in connection with their U.S. activities. Plaintiffs obtained copies of the transcripts and deposition exhibits on August 8, 2021. Plaintiffs respectfully submit the attached excerpts of transcripts and exhibits for the record in this case.

Based on these depositions, as well as the record in this case, plaintiffs respectfully request that the Court make the following findings of fact.

████████████████████████████

1.  ████████████████████████████████████████████████████████

2.  Officers who gave press conferences or interviews were: (a) Mahmoud Abbas, Chairman of the PLO and President of the PA[4]; ████████████████████████████████████
    ████████████████████████████

---

[1] Mansour Dep. 110-11 (Ex. 3 hereto).

[2] Abdelhady-Nasser Dep. 189-91 (Ex. 1 hereto); Yalowitz Second Supp. Decl. (May 7, 2021) Ex. B [ECF 1027].

[3] Yalowitz Second Supp. Decl. (May 7, 2021) Ex. E [ECF 1027].

[4] *See* Yalowitz Decl. (Nov. 12, 2020) ¶ 208 [ECF 1018].

[5] Mansour Dep. 86, 110-13 (Ex. 3 hereto); Yalowitz Second Supp. Decl. (May 7, 2021) Ex. B [ECF 1027].

**Arnold&Porter**

Hon. George B. Daniels
August 13, 2021
Page 2



3. After January 4, 2020, defendants maintained publicly available social media accounts on Twitter and Facebook.

4.

5.

6.

7.

8. For example, Dr. Mansour attended (via zoom) a meeting of the Beit Sahour USA Convention in November 2020.[15]                                    [16] In

---

[6] Abdelhady-Nasser Dep. 114, 189-91 (Ex. 1 hereto) & Ex. 7 (Ex. 7 hereto).

[7] Ghannam Dep. 144-201 (Ex. 2 hereto); *see* Yalowitz Decl. (Nov. 12, 2020) ¶ 215 & Exs. 35-36, 57-58 [ECF 1018]; Yalowitz Second Supp. Decl. (May 7, 2021) Exs. C, D [ECF 1027].

[8] Ghannam Dep. 144-45, 154-55 (Ex. 2 hereto); *see* Yalowitz Decl. (Nov. 12, 2020) ¶ 215 & Exs. 35-36, 57-58 [ECF 1018]; Second Supp. Yalowitz Decl. (May 7, 2021) Exs. C, F [ECF 1027].

[9] Ghannam Dep. 147 (Ex. 2 hereto).

[10] Ghannam Dep. 187, 199 (Ex. 2 hereto); *see* Second Supp. Yalowitz Decl. (May 7, 2021) Ex. D [DE-1027].

[11] Ghannam Dep. 166, 168, 169-70, 175, 178, 181, 182, 183-84, 189, 190, 195, 201 (Ex. 2 hereto).

[12] Mansour Dep. Ex. 4 (                                    ) (Ex. 9 hereto); Abdelhady-Nasser Dep. Exs. 5 (                                    ), 6 (                                    ) (Exs. 5, 6 hereto); *see* Abdelhady-Nasser Dep. 59 (                                    ), 72 (                                    ) (Ex. 1 hereto).

[13] *E.g.*, Abdelhady-Nasser Dep. 60-61, 72, 84, 86, 94, 109-10, 114, 117 (Ex. 1 hereto); Mansour Dep. 70, 90, 92-93 (Ex. 3 hereto); *see* Yalowitz Supp. Decl. (Feb. 9, 2021) Exs. C, D [ECF 1023].

[14] Abdelhady-Nasser Dep. 86 (Ex. 1 hereto); Mansour Dep. 52, 92, 93, 96-97, 107, 112 (Ex. 3 hereto).

[15] Mansour Dep. 93-94 & Mansour Dep. Ex. 8 (Exs. 3, 11 hereto).

[16] Mansour Dep. 93-94, 96-97 (Ex. 3 hereto).

# Arnold&Porter

Hon. George B. Daniels
August 13, 2021
Page 3

his comments, he commended "movements and organizations and solidarity committees" at "American universities," who are "supporting justice for the Palestinian people and lobbying the government, lobbying Congress," adding: "we urge them to become even more active, especially in light of the arrival a new administration in Washington."[17]



9.

10.

11.    [20]

12.    [21]

13.

[22]

14.

[23]

Respectfully yours,

Kent A. Yalowitz

Encls.
cc: ECF Counsel

---

[17] Mansour Dep. Ex. 8 (Ex. 11 hereto).

[18] Mansour Dep. 44-52, 67-68, 90-91, 97, 106 (Ex. 3 hereto); Mansour Dep. Ex. 5 (Ex. 10 hereto).

[19] Mansour Dep. 92, 97, 99, 107, 112 (Ex. 3 hereto); Abdelhady-Nasser Dep. 87 (Ex. 1 hereto) ( ).

[20] *See* Mansour Dep. 120 (Ex. 3 hereto); *see* Yalowitz Decl. (Nov. 12, 2020) Ex. 59 [ECF 1018].

[21] Mansour Dep. 14, 177-82 (Ex. 3 hereto).

[22] Mansour Dep. 65, 67, 70, 75, 77, 86, 91, 94, 98, 107, 111, 113 (Ex. 3 hereto).

[23] Ghannam Dep. 152-53 (Ex. 2 hereto).

# Arnold&Porter

Hon. George B. Daniels
August 13, 2021
Page 4

## **Index of Exhibits**

| Number | Description |
| --- | --- |
| 1 | Abdelhady-Nassar Deposition Transcript Excerpts |
| 2 | Ghannam Deposition Transcript Excerpts |
| 3 | Mansour Deposition Transcript Excerpts |
| 4 | Abdelhady-Nasser Dep. Ex. 4 |
| 5 | Abdelhady-Nasser Dep. Ex. 5 |
| 6 | Abdelhady-Nasser Dep. Ex. 6 |
| 7 | Abdelhady-Nasser Dep. Ex. 7 |
| 8 | Mansour Dep. Ex. 3 |
| 9 | Mansour Dep. Ex. 4 |
| 10 | Mansour Dep. Ex. 5 |
| 11 | Mansour Dep. Ex. 8 (transcript) |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

MIRIAM FULD et al.,

                Plaintiffs,

      v.                              20 Civ. 3374 (JMF)

PALESTINE LIBERATION ORGANIZATION et al.,

                Defendants.

———————————————————— x

## Memorandum of Law in Support of the Government's Intervention in Defense of the Promoting Security and Justice for Victims of Terrorism Act of 2019

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
86 Chambers Street
New York, New York 10007
Telephone: 212.637.2703
Fax: 212.637.2702
E-mail: benjamin.torrance@usdoj.gov

BENJAMIN H. TORRANCE
Assistant United States Attorney

– Of Counsel –

BRIAN M. BOYNTON
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director

ZACHARY A. AVALLONE
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch

# Table of Contents

Preliminary Statement ..................................................................................... 1

Statutory Background ...................................................................................... 2

Argument ......................................................................................................... 7

    A.   The PSJVTA Establishes Personal Jurisdiction Based on Defendants'
           Knowing and Voluntary Consent .............................................................. 8

       1.   The PSJVTA Validly Provides for the PA and PLO to Consent to
            Jurisdiction ........................................................................................ 8

       2.   The PSJVTA, as an Enactment in the Field of Foreign Affairs, Must Be
            Accorded Deference ......................................................................... 10

       3.   The PA and PLO Have Not Demonstrated Their Deemed Consent to
            Jurisdiction Is Unconstitutional ....................................................... 13

    B.   The PSJVTA Does Not Impose an Unconstitutional Condition ................... 19

Conclusion ...................................................................................................... 23

# Table of Authorities

*Cases*:

*Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*,
817 F.3d 755 (Fed. Cir. 2016) .................................................................................. 21

*Aybar v. Aybar*,
169 A.D.3d 137 (N.Y. App. Div. 2d Dep't 2019) ..................................................... 17

*Bane v. Netlink, Inc.*,
925 F.2d 637 (3d Cir. 1990) ...................................................................................... 21

*Bank Markazi v. Peterson*,
136 S. Ct. 1310 (2016) ........................................................................................ 10, 11

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016) .............................................................................. passim

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........................................................................................ 8, 9, 20

*Center for Constitutional Rights v. CIA*,
765 F.3d 161 (2d Cir. 2014) ...................................................................................... 13

*Chen v. Dunkin' Brands, Inc.*,
954 F.3d 452 (2d Cir. 2020) ................................................................................ 16, 17

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .............................................................................................. 3, 9

*Dorchester Financial Securities, Inc. v. Banco BRJ, S.A.*,
722 F.3d 81 (2d Cir. 2013) .......................................................................................... 9

*Durand v. Hollins*,
8 F. Cas. 111 (C.C.S.D.N.Y. 1860) .......................................................................... 22

*Haig v. Agee*,
453 U.S. 280 (1981) ................................................................................................... 22

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) ................................................................................................ 12, 19

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites*,
456 U.S. 694 (1982) .................................................................................... 1, 8, 9, 14

*J. McIntyre Machinery, Ltd. v. Nicastro*,
564 U.S. 873 (2011) ................................................................................................... 17

*Klieman v. PA*,
82 F. Supp. 3d 237 (D.D.C. 2015) .............................................................................. 3

*Klieman v. PA*,
923 F.3d 1115 (D.C. Cir. 2019) .................................................................................. 4

*Estate of Klieman v. PA,*
  467 F. Supp. 2d 107 (D.D.C. 2006) ........................................................................ 3

*Klinghoffer v. SNC Achille Lauro Ed Altri-Gestione Motonave Achille Lauro,*
  937 F.2d 44 (2d Cir. 1991) ..................................................................................... 4

*Knox v. PLO,*
  248 F.R.D. 420 (S.D.N.Y. 2008) ............................................................................ 2

*Koontz v. St. Johns River Water Management Dist.,*
  570 U.S. 595 (2013) ........................................................................................ 20, 21

*Leonard v. USA Petroleum Corp.,*
  829 F. Supp. 882 (S.D. Tex. 1993) ....................................................................... 16

*Livnat v. PA,*
  851 F.3d 45 (D.C. Cir. 2017) .................................................................................. 3

*In re Mid-Atlantic Toyota Antitrust Litigation,*
  525 F. Supp. 1265 (D. Md. 1981) ......................................................................... 16

*Moran v. Burbine,*
  475 U.S. 412 (1986) .............................................................................................. 14

*New York v. Quarles,*
  467 U.S. 649 (1984) .............................................................................................. 15

*Oil States Energy Services, LLC v. Greene's Energy Group, LLC,*
  138 S. Ct. 1365 (2018) .......................................................................................... 20

*Oregon v. Elstad,*
  470 U.S. 298 (1985) .............................................................................................. 15

*Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co.,*
  243 U.S. 93 (1917) ................................................................................................ 18

*Perry v. Sindermann,*
  408 U.S. 593 (1972) .............................................................................................. 20

*Roell v. Withrow,*
  538 U.S. 580 (2003) ........................................................................................ 13, 14

*Sokolow v. PLO,*
  No. 04 Civ. 397, 2011 WL 1345086 (S.D.N.Y. Mar. 30, 2011) .............................. 2

*United States v. O'Brien,*
  926 F.3d 57 (2d Cir. 2019) .................................................................................... 15

*United States v. Taylor,*
  745 F.3d 15 (2d Cir. 2014) .................................................................................... 14

*United States v. Velez,*
  354 F.3d 190 (2d Cir. 2004) .................................................................................. 15

*United States v. Wong Kim Ark,*
   169 U.S. 649 (1898) ................................................................ 22

*Waldman v. PLO,*
   835 F.3d 317 (2d Cir. 2016)................................................ 2, 3, 8, 18

*Waldman v. PLO,*
   925 F.3d 570 (2d Cir. 2019)......................................................... 4

*Washington State Grange v. Washington State Republican Party,*
   552 U.S. 442 (2008) ................................................................ 7

*Wellness Int'l Network v. Sharif,*
   135 S. Ct. 1932 (2015) ...................................................... 8, 10, 13, 14

*Statutes*:

18 U.S.C. § 2331............................................................................ 2

18 U.S.C. § 2333............................................................................ 1, 2

18 U.S.C. § 2334............................................................................ passim

22 U.S.C. § 2378b .......................................................................... 12

22 U.S.C. § 2378c-1 ....................................................................... 13, 23

22 U.S.C. § 5201 ........................................................................... 11, 22

22 U.S.C. § 5202 ........................................................................... 3, 4, 12

Pub. L. No. 102-572 ....................................................................... 2

Pub. L. No. 103-125 ....................................................................... 12

Pub. L. No. 109-446 ....................................................................... 12

Pub. L. No. 115-141 ....................................................................... 5, 13, 23

Pub. L. No. 115-253 ....................................................................... 4

Pub. L. No. 116-6 ......................................................................... 12

Pub. L. No. 116-94 ........................................................................ 5

*Rules*:

Federal Rule of Civil Procedure 37(b)(2)(A)............................................. 14

*Legislative History*:

165 Cong. Rec. S7182....................................................................... 7, 11

165 Cong. Rec. S7183....................................................................... 7

166 Cong. Rec. S627........................................................................ 10

## Preliminary Statement

The United States respectfully intervenes in this action, pursuant to Rule 5.1 of the Federal Rules of Civil Procedure, and submits this memorandum in support of the constitutionality of 18 U.S.C. § 2334(e), as amended by the Promoting Security and Justice for Victims of Terrorism Act of 2019 ("PSJVTA").

The PSJVTA is the most recent of Congress's efforts to "open the courthouse door to victims of international terrorism"[1] to allow them to vindicate their interests in federal court and to receive just compensation for their injuries. Through several statutes over four decades, in particular the Anti-Terrorism Act of 1992 ("ATA"), 18 U.S.C. § 2333(d)(2), Congress has provided civil damages remedies for United States nationals harmed by acts of international terrorism. In order to realize the goals and effective functioning of the ATA's remedy, particularly in light of judicial decisions holding that the defendants in this case, the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO"), are not subject to personal jurisdiction in U.S. courts, Congress has enacted two statutes—the Anti-Terrorism Clarification Act ("ATCA") and the PSJVTA—that specified actions that will be deemed consent to personal jurisdiction in civil cases under the ATA.

The Supreme Court has long recognized consent as a basis for personal jurisdiction, and has held that there are a variety of "legal arrangements" through which a defendant may consent to personal jurisdiction. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites*, 456 U.S. 694, 703 (1982). Congress has particular

---

[1]     S. Rep. 102-342, at 45 (1992).

authority to enact such a statute given its power to act in the field of foreign affairs. Section 2334(e) is consistent with the Constitution and should be upheld.

## Statutory Background

In 1992, in order "to develop a comprehensive legal response to international terrorism," Congress enacted the ATA, which created a civil damages remedy for United States nationals harmed by an act of international terrorism committed by a foreign terrorist organization. H.R. Rep. No. 102-1040, at 5 (1992) ("1992 House Report"); *see* Pub. L. No. 102-572, § 1003(a), 106 Stat. 4506, 4521–24 (1992) (adding 18 U.S.C. §§ 2331, 2333–2338). The ATA allows those United States nationals to sue "any person who aids and abets, by knowingly providing substantial assistance, or who conspires [to commit] an act of international terrorism." 18 U.S.C. § 2333(d)(2).

In the ensuing years, courts regularly exercised personal jurisdiction in ATA cases against the Palestine Liberation Organization ("PLO") and the Palestinian Authority ("PA"),[2] holding that "the totality of activities in the United States by the PLO and the PA justifies the exercise of general personal jurisdiction." *Sokolow v. PLO*, No. 04 Civ. 397, 2011 WL 1345086, at *3 (S.D.N.Y. Mar. 30, 2011), *vacated sub nom. Waldman v. PLO*, 835 F.3d 317 (2d Cir. 2016); *accord, e.g., Knox v. PLO*,

---

[2]     The PLO has been recognized by the United Nations as the representative of the Palestinian people; the PA was created pursuant to the 1993 Oslo Accords to exercise interim governance authority for the Palestinian people in Gaza and the West Bank. The United States does not recognize either the Palestinian Authority or the Palestine Liberation Organization as a sovereign government. As a matter of historical practice, Congress and the Executive Branch have worked together closely to determine U.S. policies with respect to those entities.

248 F.R.D. 420, 427 (S.D.N.Y. 2008); *Estate of Klieman v. PA*, 467 F. Supp. 2d 107, 113 (D.D.C. 2006).

However, in 2014, the Supreme Court clarified that general (or "all-purpose") personal jurisdiction was appropriate only when the defendant was "essentially at home in the forum," and explained that for non-natural persons "at home" was usually limited to the place of incorporation or principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). Courts applying the *Daimler* standards to pending ATA cases concluded that the PA and PLO were not "at home" in the United States and thus not subject to general jurisdiction. *Waldman*, 835 F.3d at 337; *Livnat v. PA*, 851 F.3d 45, 48–52 (D.C. Cir. 2017); *Klieman v. PA*, 82 F. Supp. 3d 237, 246 (D.D.C. 2015). Courts also declined to exercise specific (conduct-linked) personal jurisdiction because "these [terrorist] actions, as heinous as they were, were not sufficiently connected to the United States to provide specific personal jurisdiction in the United States." *Waldman,* 835 F.3d at 337; *accord Livnat*, 851 F.3d at 57; *Klieman*, 82 F. Supp. 3d at 248–49.

Congress responded in 2018 by enacting the ATCA. Section 4 of the ATCA provides that "for purposes of any civil action" under the ATA of 1992, "a defendant shall be deemed to have consented to personal jurisdiction in such civil action if, regardless of the date of the occurrence of the act of international terrorism upon which such civil action was filed, the defendant," after January 31, 2019, either accepts specified forms of foreign assistance or maintains an office within the United States pursuant to a waiver or suspension of 22 U.S.C. § 5202 (which

3

prohibits the PLO from maintaining an office in the United States). Pub. L. No. 115-253, § 4, 132 Stat. 3183, 3184 (adding 18 U.S.C. § 2334(e)).

After the ATCA's enactment, the PA and PLO structured their affairs to avoid consenting to jurisdiction. On December 26, 2018, the PA informed the Secretary of State that it was declining to accept the forms of foreign assistance listed in the ATCA. The PLO does not receive U.S. foreign assistance. The PLO continues to occupy its United Nations Observer Mission in New York, but that office does not require any waiver or suspension of 22 U.S.C. § 5202. *See Klinghoffer v. SNC Achille Lauro Ed Altri-Gestione Motonave Achille Lauro*, 937 F.2d 44, 46 (2d Cir. 1991). Since prior to the enactment of the ATCA, the PLO has not operated any other office in the United States pursuant to a waiver or suspension of 22 U.S.C. § 5202.

Because the ATCA's factual predicates were not satisfied, the D.C. Circuit and Second Circuit continued to hold that U.S. courts could not exercise personal jurisdiction over the PA and PLO in the cases in question. *Klieman v. PA*, 923 F.3d 1115, 1128 (D.C. Cir. 2019), *vacated*, 140 S. Ct. 2713 (2020); *Waldman v. PLO*, 925 F.3d 570, 575 (2d Cir. 2019), *vacated*, 140 S. Ct. 2714 (2020). Concluding "that plaintiffs have not made an adequate showing that any of [the ATCA's] factual predicates has been triggered," those courts did not analyze the constitutionality of the ATCA's provisions on deemed consent to personal jurisdiction. *Klieman*, 923 F.3d at 1128.

The plaintiffs filed petitions for certiorari in the Supreme Court. While those petitions were pending, Congress enacted the PSJVTA. Pub. L. No. 116-94, § 903, 133 Stat. 2534, 3082 (December 20, 2019). Among other things,[3] the PSJVTA superseded the personal jurisdiction provisions in the ATCA. The Act added a definition of "defendant" to specifically include "the Palestinian Authority," "the Palestine Liberation Organization," and their affiliates and successors. *Id.* § 903(c)(1)(A). The Act also removed the condition that accepting specified foreign assistance would constitute consent.

In addition, the PSJVTA provided new factual predicates for the conduct that will constitute deemed consent to personal jurisdiction for civil actions under the ATA. The Act first focused on the "Palestinian Authority's practice of paying salaries to terrorists serving in Israeli prisons, as well as to the families of deceased terrorists."[4] The PSJVTA provides that a defendant "shall be deemed to have consented to personal jurisdiction" in civil ATA cases, if 120 days after the enactment of the PSJVTA (i.e., after April 18, 2020), it "makes any payment, directly or indirectly—

---

[3] The PSJVTA included a number of provisions that are not at issue here, aimed at facilitating the resolution of ATA claims. *Id.* § 903(b). The portion of the PSJVTA challenged in this action is limited to the jurisdictional amendments contained in § 903(c), which, for ease of reference, this memorandum refers to as the PSJVTA.

[4] Taylor Force Act, Pub. L. No. 115-141, § 1002 (Findings), 132 Stat 348, 1143 (March 23, 2018). That Act is separate legislation relating specifically to assistance for the West Bank and Gaza that directly benefits the PA, where Congress further found that the PA's practice of making such payments "is an incentive to commit acts of terror."

> (i) to any payee designated by any individual who, after being fairly tried or pleading guilty, has been imprisoned for committing any act of terrorism that injured or killed a national of the United States, if such payment is made by reason of such imprisonment; or
>
> (ii) to any family member of any individual, following such individual's death while committing an act of terrorism that injured or killed a national of the United States, if such payment is made by reason of the death of such individual[.]"

18 U.S.C. § 2334(e)(1)(A).

The PSJVTA next established the scope of PLO or PA activities within the United States that would constitute deemed consent to personal jurisdiction in ATA civil actions. Specifically, the Act now provides that a defendant "shall be deemed to have consented to personal jurisdiction" if fifteen days after the enactment of the PSJVTA (i.e., after January 4, 2020), it maintains, establishes, or procures any office in the United States or "conducts any activity while physically present in the United States on behalf of the Palestine Liberation Organization or the Palestinian Authority" outside limited exceptions related to maintaining an office for or conducting business at the United Nations, activities involving government officials or participation in training or related activities funded or arranged by the United States government, legal representation, or ancillary activities. 18 U.S.C. § 2334(e)(1)(B)(i)-(iii), (e)(3). As the PSJVTA's lead sponsor explained, the Act "allow[s] the PA/PLO to conduct a very narrow scope of activities on U.S. soil—such as activities pertaining to official business at the United Nations, engagements with U.S. officials necessary to our national interest, and legal expenses related to adjudicating or resolving claims filed in U.S. courts—without consenting to personal

jurisdiction in civil ATA cases." 165 Cong. Rec. S7182 (Dec. 19, 2019) (Sen. Lankford).

Congress also sought to apply the deemed consent-to-jurisdiction provisions to pending and some closed cases like *Sokolow*. Activities that triggered deemed consent to personal jurisdiction would be considered consent "regardless of the date of the occurrence of the act of international terrorism upon which such civil action was filed." 18 U.S.C. § 2334(e)(1). And consent to personal jurisdiction under these new provisions would "apply to any case pending on or after August 30, 2016." PSJVTA § 903(d)(2). As Senator Grassley explained, the PSJVTA "sends a clear signal that Congress intends to empower courts to restore jurisdiction in cases previously dismissed." 165 Cong. Rec. S7183.

Following the PSJVTA's enactment, the Supreme Court granted the pending petitions for certiorari in *Sokolow/Waldman* and *Klieman*, vacated the decisions of the courts of appeals, and remanded for consideration of the matters in light of the PSJVTA. 140 S. Ct. 2713–14 (2020). This action was filed three days later.

## Argument

In the PSJVTA, Congress has specified activities that constitute deemed consent to personal jurisdiction in a civil action under the ATA. That is consistent with the constitutional requirements of due process under the Fifth Amendment.[5]

---

[5] Principles of constitutional avoidance would require that this Court not address the constitutionality of the PSJVTA unless it finds as a matter of fact that the PA or PLO has engaged in the activities that Congress specified as constituting consent to personal jurisdiction. *See, e.g., Washington State Grange v. Washington*

**A. The PSJVTA Establishes Personal Jurisdiction Based on Defendants' Knowing and Voluntary Consent**

**1. The PSJVTA Validly Provides for the PA and PLO to Consent to Jurisdiction**

The Second Circuit has held that the PA and PLO, as non-sovereign entities, are entitled to due process rights, *Waldman*, 835 F.3d at 329, and the requirement that a court have personal jurisdiction over a defendant flows from those rights, *Bauxites*, 456 U.S. at 702–03. But "the requirement of personal jurisdiction . . . can . . . be waived." *Id.* at 703. More specifically, a defendant may consent to a court's exercise of personal jurisdiction through a "variety of legal arrangements." *Id.* at 703; *accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985); *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016) ("a party may simply consent to a court's exercise of personal jurisdiction . . . notwithstanding the remoteness from the state of its operations and organization"). As long as a defendant's consent is "knowing and voluntary," the court's exercise of jurisdiction is permissible and consistent with due process, *Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1948 (2015)—personal jurisdiction based on such consent "does not

---

*State Republican Party*, 552 U.S. 442, 450 (2008) ("courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied" (quotation marks omitted)). However, the government's understanding is that the defendants have conceded that they have made certain payments described in 18 U.S.C. § 2334(e)(1)(A). (*E.g.*, Defs.' Supp. Br., ECF No. 42, at 11–12 (noting defendants' "decision to continue engaging in" payments)). The government takes no position on whether any of the statute's factual predicates have been satisfied; rather, assuming the Court finds that one or both of those predicates has been satisfied, the government urges that the PSJVTA is constitutional.

offend due process" as long as the consent was not "unreasonable and unjust," *Burger King*, 471 U.S. at 472 n.14 (quotation marks omitted); *accord Dorchester Financial Securities, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013).

Consistent with those principles, the PSJVTA sets out a reasonable "legal arrangement[ ]" through which Congress specified a defendant consents to personal jurisdiction, *Bauxites*, 456 U.S. at 703, and gives potential defendants "fair warning that a particular activity may subject [them] to the jurisdiction" of U.S. courts, *Burger King*, 471 U.S. at 472 (quotation marks omitted). The statute expressly states what actions will cause a defendant to be "deemed to have consented" to personal jurisdiction in the courts of the United States, and it specifies that that consent is limited to civil ATA claims. 18 U.S.C. § 2334(e). The PSJVTA accordingly gives the defendants fair warning about what conduct will subject them to personal jurisdiction with respect to a particular class of claims, and a reasonable period to "'structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Daimler*, 571 U.S. at 139 (quoting *Burger King*, 471 U.S. at 472). The Act provides a 120-day implementation period before consent will be deemed by making payments to designees or family members of persons imprisoned for or killed while committing an act of terrorism that killed or injured a U.S. national, 18 U.S.C. § 2334(e)(1)(A), and a fifteen-day period before consent will be deemed from non-excepted activities on behalf of the PA or PLO while physically present in the United States, *id.* § 2334(e)(1)(B).

In short, since the PSJVTA's enactment, the PA and PLO have "know[n]" what activities will be deemed consent, and have had the opportunity to "voluntarily" choose whether or not to continue such activities and thereby consent to jurisdiction in the courts of the United States for ATA civil actions. *Wellness Int'l*, 135 S. Ct. at 1948. Asserting personal jurisdiction based on that knowing and voluntary consent is neither unreasonable nor unjust, and is consistent with due process.

### 2. The PSJVTA, as an Enactment in the Field of Foreign Affairs, Must Be Accorded Deference

Furthermore, the PSJVTA "warrants respectful review by courts" because it was enacted "on a matter of foreign policy." *Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1317 (2016). Specifically, Congress enacted, and the President signed into law, the PSJVTA to facilitate providing a meaningful response to international terrorism, and the political branches acted against an extensive backdrop of statutes concerning the PLO and PA.

The ATA's civil-liability provision is intended "to develop a comprehensive legal response to international terrorism." 1992 House Report at 5. Congress found in the ATCA, however, that because courts had determined that the PA and PLO were not subject to general personal jurisdiction in the United States, the ATA's goals were not being realized. *See* H.R. Rep. No. 115-858, at 6. Congress thus determined that it was necessary to enact the ATCA so the ATA's civil-liability provision could function effectively to "halt, deter, and disrupt international terrorism." *Id.* at 7–8; *see also id.* at 2–3. In amending the ATCA's deemed-consent provisions through the PSJVTA, Congress acted with the same purpose. *See* 166

10

Cong. Rec. S627 (Jan. 28, 2020) (Sen. Leahy) ("Congress is committed to pursuing
justice for American victims of terrorism while ensuring appropriate standards
regarding the ability of foreign missions to conduct official business in the United
States."); 165 Cong. Rec. S7182 (Dec. 19, 2019) (Sen. Lankford) (bill "strike[s] a
balance between Congress's desire to provide a path forward for American victims
of terror to have their day in court and the toleration by the Members of this body to
allow the PA/PLO to conduct a very narrow scope of activities on U.S. soil"); *id.*
(Sen. Grassley) ("these lawsuits disrupt and deter the financial support of terrorist
organizations. By cutting terrorists' financial lifelines, the ATA is a key part of the
U.S. arsenal in fighting terrorism and protecting American citizens.").

The actions Congress selected in the PSJVTA to "deem[ ]" consent to personal
jurisdiction are consistent with this legislative purpose. The PA and PLO are
*sui generis* foreign entities that exercise governmental power but have not been
recognized as a sovereign government by the Executive Branch, and that have a
unique relationship with the United States government premised on the entities'
renunciation of terrorism and commitment to peace in the Middle East. Their
ability to operate within the United States is dependent on the judgments of the
political branches, which have long imposed restrictions on these entities' U.S.
operations based in part on the same concerns that motivated enactment of the
ATCA and PSJVTA—namely, concerns about their historical support for acts of
terrorism. *See* 22 U.S.C. § 5201 (enacted 1987; determining "that the PLO and its
affiliates are a terrorist organization and a threat to the interests of the United

States, its allies, and to international law and should not benefit from operating in the United States"); *id.* § 5202 (prohibiting PLO from maintaining an office in the United States); Middle East Peace Facilitation Act of 1993, Pub. L. No. 103-125, § 3(b)(2), (d)(2), 107 Stat. 1309, 1310 (authorizing temporary waiver of that prohibition if the President certifies that "it is in the national interest of the United States" and "the Palestine Liberation Organization continues to abide by" its Oslo Accords commitments); Department of State, Foreign Operations, and Related Programs Appropriations Act, 2019, Pub. L. No. 116-6, div. F, § 7041(k)(2)(B)(i), 133 Stat. 14, 341 (authorizing temporary waiver of that prohibition if President determines the Palestinians have not obtained United Nations membership status as a state and have not "actively supported an [International Criminal Court] investigation against Israeli nationals for alleged crimes against Palestinians"); *see also* Palestinian Anti-Terrorism Act of 2006, Pub. L. No. 109-446, § 7*,* 22 U.S.C. § 2378b note (prohibiting the establishment or maintenance in the United States of any office of the PA during any period for which it is effectively controlled by or unduly influenced by Hamas, in the absence of a statutory waiver).

Similarly, in deeming payments to designees and family members of persons imprisoned for or killed while committing acts of terrorism killing or injuring U.S. nationals to constitute consent to personal jurisdiction, Congress furthered critical interests in national security and foreign affairs by acting to discourage support for violence harming U.S. nationals. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 8–10 (2010) (discussing national security interests in deterring support for

terrorism); *Center for Constitutional Rights v. CIA*, 765 F.3d 161, 169 (2d Cir. 2014) ("incit[ing] violence against American interests at home and abroad [will cause] damage to the national security"); Taylor Force Act, Pub. L. No. 115-141, § 1002 (Findings), 132 Stat. 348, 1143 (22 U.S.C. § 2378c-1 note) (Mar. 23, 2018).

In this context, it was reasonable and consistent with the Fifth Amendment for Congress and the Executive Branch to determine that the PLO's or PA's voluntarily and knowingly engaging in specified activities in the United States, or making payments by reason of terrorist acts injuring or killing U.S. nationals, should be "deemed" consent to personal jurisdiction in ATA civil cases—the purpose of which is to deter terrorism. *See* H.R. Rep. No. 115-858, at 7 (2018) (committee report in support of ATCA) (explaining that "Congress has repeatedly tied [the PA's and PLO's] continued receipt of these privileges [including presence in the United States] to their adherence to their commitment to renounce terrorism," and that it is appropriate to deem the continued acceptance of these benefits to be "consent to jurisdiction in cases in which a person's terrorist acts injure or kill U.S. nationals").

### 3. The PA and PLO Have Not Demonstrated Their Deemed Consent to Jurisdiction Is Unconstitutional

The PA/PLO's primary argument against the PSJVTA is that they must receive some benefit in return for their "deemed" consent to be constitutionally valid. (Defs.' Supp. Br. (ECF No. 42) 5–11). But as explained above, consent to personal jurisdiction need only be "knowing and voluntary." *Wellness Int'l*, 135 S. Ct. at 1948; *see Roell v. Withrow*, 538 U.S. 580, 590 (2003). Nothing in that phrase,

or the case law concerning consent to jurisdiction, suggests a reciprocity requirement. To the contrary, as the Supreme Court has put it, "the key inquiry is whether 'the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily' " proceeded. *Wellness Int'l*, 135 S. Ct. at 1948 (quoting *Roell*, 538 U.S. at 590). Although the Court has not specifically addressed defendants' argument regarding the need for reciprocity in consent cases, it has upheld the assertion of personal jurisdiction based on a defendant's actions, in a situation in which the defendant receives nothing in return. In *Bauxites*, the Court held that under Federal Rule of Civil Procedure 37(b)(2)(A), a district court could deem personal jurisdiction to have been established as a sanction for the defendant's failure to comply with a discovery order directed at establishing jurisdictional facts. 456 U.S. at 703–06. The Court explained that such an action "amount[s] to a legal submission to the jurisdiction of the court, whether voluntary or not." *Id.* at 704–05. The Court likewise observed that a defendant's failure to timely object to personal jurisdiction would have the same effect of waiving the requirement, *id.*, even though the defendant would not receive anything in return.

And in other contexts the Supreme Court has held that a decision to waive a right is "knowing" if it was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it," and is "voluntary" if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (waiver of *Miranda* rights); *accord United States v. Taylor*, 745 F.3d 15, 23 (2d Cir.

14

2014) (same); *United States v. Velez*, 354 F.3d 190, 196 (2d Cir. 2004) (applying

same definition to waiver of inadmissibility of statements made during plea

discussions); *United States v. O'Brien*, 926 F.3d 57, 76 (2d Cir. 2019) (consent to

search is given "freely and voluntarily" under Fourth Amendment if not "the

product of duress or coercion"; upholding consent to search obtained without any

exchange). Such a waiver can be effected even in the absence of "promises" made to

obtain it, or any other consideration or exchange. *Oregon v. Elstad*, 470 U.S. 298,

302 (1985).[6]

Thus, consent can be knowing and voluntary even where the person consenting

receives no benefit in return. To be sure, the waiver of personal jurisdiction may be

part of an exchange; such an exchange may occur when a state or the United States

conditions a benefit or service on a person's agreement, express or implied, to

consent to service or personal jurisdiction in a forum. *See Brown*, 814 F.3d at 632–

33.[7] In addition, an exchange may be evidence that the person waiving a right did

---

[6]    Before *Miranda*, the Supreme Court determined the propriety of an accused's
statements based on whether they "were 'voluntary' within the meaning of the Due
Process Clause," a test that was satisfied in the absence of "techniques and methods
offensive to due process" or circumstances demonstrating the "suspect clearly had
no opportunity to exercise a free and unconstrained will." *Elstad*, 470 U.S. at 304;
*accord New York v. Quarles*, 467 U.S. 649, 661 (1984) (O'Connor, J., concurring in
judgment) (statement not voluntary if "interrogation was deemed unreasonable or
shocking, or if the accused clearly did not have an opportunity to make a rational or
intelligent choice"). Neither consideration nor reciprocity was required.

[7]    In its brief in *Klieman*, the government described just such a condition: the
Executive and Legislative Branches' "historical practice" of "impos[ing] conditions"
on the PA/PLO's right to operate in the United States and to receive foreign
assistance. Br. for U.S. as Amicus Curiae, No. 15-7034 (D.C. Cir.), at 12–13. The
PA/PLO misconstrues that description as endorsing the proposition that "'deemed'

so voluntarily. But there is no requirement, in the Due Process Clause or elsewhere, of any such reciprocity before a person's waiver of personal jurisdiction can be considered knowing and voluntary.[8]

The PA and PLO read too much into the Second Circuit's decisions in *Brown* and *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 452 (2d Cir. 2020), in support of their contention that consent requires more than a knowing and voluntary decision. Both cases concerned whether an out-of-state defendant had consented to general personal jurisdiction in the state by registering to do business in the state and, in accordance with the registration statute, appointing an in-state agent to accept service. *Brown*, 814 F.3d at 622; *Chen*, 954 F.3d at 496. In both cases, the court declined to opine on the due process limits of consent to personal jurisdiction achieved by satisfying statutory conditions[9]—instead, influenced by the Supreme

---

consent to jurisdiction cannot be squared with Due Process unless there is reciprocity." (Defs.' Supp. Br. 1, 10). But to say, as the government did in *Klieman*, that it is reasonable to deem an exchange of benefits for conditions as valid consent to personal jurisdiction is far different from saying that an exchange is necessary to consent.

[8] The PA and PLO rely on two district court cases that suggest jurisdiction by consent depends on a "bargain." (Defs.' Supp. Br. 7); *Leonard v. USA Petroleum Corp.*, 829 F. Supp. 882, 889 (S.D. Tex. 1993); *In re Mid-Atlantic Toyota Antitrust Litigation*, 525 F. Supp. 1265, 1278 (D. Md. 1981). Both cases involved putative consent to widely applicable general jurisdiction, inferred from the defendants' constructive presence in the state through registration; the PSJVTA, which limits jurisdiction to a specific type of action and expressly deems activities to constitute consent, is distinguishable on both grounds. In any event, neither decision is binding on this Court.

[9] Similarly, the government takes no position here on whether a state may enact a statute deeming certain conduct, such as registering to do business in the state, to be consent to jurisdiction. This Court need not address that question to decide the constitutionality of the PSJVTA. In this unique foreign affairs context, in

16

Court's narrowing of general jurisdiction in *Daimler*, it construed the state statutes

as not "embodying actual consent . . . to the state's exercise of general jurisdiction."

*Brown*, 814 F.3d at 626, 636–37; *accord Chen*, 954 F.3d at 499.[10] But the

interpretation the Second Circuit rejected (one that it said would "rob" *Daimler* of

meaning "by a back-door thief") was the "expansive" view that the court should

"infer from an ambiguous statute" that registration and appointment of an agent

alone constitute consent to general jurisdiction—that is, "the power to adjudicate

any matter concerning any registered corporation, no matter where the matter

arose and no matter how limited the state's interest in the dispute." *Brown*, 814

F.3d at 622, 640.

That is far afield from the PSJVTA, which expressly provides that certain

actions will be deemed consent to jurisdiction in a limited class of cases. The Second

Circuit recognized that "a carefully drawn . . . statute that expressly required

---

contrast to the limited and mutually exclusive sovereignty of the several states, Congress may deem certain actions of defendants like the PA and PLO to be consent to personal jurisdiction in the United States, even if a state cannot enact similar legislation. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) (plurality op.) ("personal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis").

[10]     As explained in *Aybar v. Aybar*—cited favorably in *Chen*, 954 F.3d at 499—prior to *Daimler*, New York courts had held a corporation's appointment of an in-state agent for service was enough to establish its "continuous and systematic course of doing business" in the state, and therefore its presence for general personal jurisdiction. 169 A.D.3d 137, 147, 151 (N.Y. App. Div. 2d Dep't 2019), *appeal pending*, No. 2019-239, 139 N.E.3d 391 (N.Y.). After *Daimler* concluded that such presence alone is not enough for general jurisdiction, the state courts have concluded that mere registration and appointment of an agent, "without the express consent of the foreign corporation to general jurisdiction," does not suffice to confer general jurisdiction. *Id.* at 151–52; *see also Brown*, 814 F.3d at 638–40.

consent to general jurisdiction . . . might well be constitutional." *Brown*, 814 F.3d at 641. Rather than requiring courts to "infer" consent based on a "slender inference . . . pulled from routine bureaucratic measures that were largely designed for another purpose entirely," *id.* at 639, the PSJVTA expressly states that a defendant is deemed to have consented to personal jurisdiction in U.S. courts if it engages in specifically enumerated activities in the United States or with a nexus to foreign policy interests.[11] The PSJVTA thus puts defendants on notice that their choice to continue those activities will be the "voluntary act" that manifests consent to jurisdiction, even if no quid pro quo is given. *Cf. Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 95–96 (1917) (defendant's appointment of agent for service of process constitutionally subjected defendant to suit in state for cases growing out of defendant's activities because the governing statute "ha[d] been held to go to that length" and the execution of the document "was the defendant's voluntary act").

Moreover, in contrast to the general jurisdiction statutes at issue in *Brown* and *Chen*, the PSJVTA grants jurisdiction only over specified civil actions under a single federal statute: the ATA. Civil actions under the ATA have a nexus to concerns with combating terrorism, concerns that have also historically been the basis for statutory restrictions on PLO and PA activities in the United States. That nexus

---

[11]    The express provisions of the PSJVTA also distinguish this case from *Waldman*, where the Second Circuit held that, prior to the ATCA or PSJVTA, consent to personal jurisdiction could not be inferred from the PA/PLO's appointment of an agent to accept process. 835 F.3d at 343.

distinguishes the PSJVTA from defendants' hypothetical statute, under which "any activity anywhere in the world" would be deemed consent (Defs. Supp. Br. 15 (emphasis omitted)): the activities specified in the PSJVTA are linked to the ATA claims the PSJVTA seeks to support, and to Congress's and the Executive Branch's foreign-affairs and national-security concerns that have long motivated statutory restrictions on the activities of the PA/PLO, warranting this Court's deference. *See Humanitarian Law Project*, 561 U.S. at 35–36 (discussing deference owed to political branches when "sensitive interests in national security and foreign affairs [are] at stake"). The PSJVTA is thus substantially narrower than state consent-by-registration statutes, and poses less risk of unfair surprise. *Brown* and *Chen* therefore do not support the PA and PLO's position that there must be more than "knowing and voluntary" consent in this context.[12]

## B. The PSJVTA Does Not Impose an Unconstitutional Condition

Although they do not squarely advance the argument in this case, the PA and PLO have previously argued that the PSJVTA's "deemed consent" provision imposes an unconstitutional condition. (Defs.' Supp. Br. 14 n.3). The unconstitutional conditions doctrine "vindicates the Constitution's enumerated rights by preventing

---

[12]     Defendants also contend the PSJVTA violates constitutional separation of powers as a legislative attempt to undercut judicial decisions. (Defs.' Supp. Br. 19-21). But those prior decisions addressed personal jurisdiction based on minimum contacts with a forum, or whether the factual predicates of the ATCA were met. The PSJVTA does nothing to "change these courts' interpretation and application of constitutional rules" (Defs.' Supp. Br. 20); instead, it creates new deemed-consent criteria for the courts to apply for the first time.

the government from coercing people into giving them up" by "deny[ing] a benefit to a person because he exercises a constitutional right." *Koontz v. St. Johns River Water Management Dist.*, 570 U.S. 595, 604 (2013) (quotation marks omitted); *see Perry v. Sindermann*, 408 U.S. 593, 597 (1972). The PA and PLO have previously contended that they will be forced to give up due process rights unless they stop carrying out Palestinian laws regarding the payments at issue, or curtail their activities in the United States.

Neither the Supreme Court nor the Second Circuit has applied an unconstitutional conditions doctrine to a statute that deems certain actions taken by a defendant to be consent to personal jurisdiction for purposes of the Fifth Amendment's Due Process Clause. And no case has addressed such a statute with respect to these *sui generis* defendants. This Court should not be the first to do so, where defendants mention the unconstitutional conditions doctrine only in a footnote. Moreover, the doctrine only "prevents the Government from using conditions 'to produce a result which it could not command directly,'" *Oil States Energy Services, LLC v. Greene's Energy Group, LLC*, 138 S. Ct. 1365, 1377 n.4 (2018) (quoting *Sindermann*, 408 U.S. at 597)—and as explained above, the PSJVTA is permissible on its own terms.

However, assuming that some form of unconstitutional conditions doctrine applies in this context, it is satisfied here. As explained above, consent to personal jurisdiction, even as a condition on some other benefit, "does not offend due process" unless it is "unreasonable and unjust." *Burger King*, 471 U.S. at 472 n.14 (quotation

marks omitted). Defendants' suggestion that the government cannot condition any benefit on the surrender of objections to personal jurisdiction sweeps far too broadly and contradicts judicial decisions upholding such arrangements under certain circumstances. *E.g.*, *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1990) (upholding express statutory requirement of consent to general personal jurisdiction); *see also Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*, 817 F.3d 755, 770 n.1 (Fed. Cir. 2016) (O'Malley, J., concurring) ("the Supreme Court has upheld the validity of consent-by-registration statutes numerous times since the development of the unconstitutional conditions doctrine").

*Burger King*'s reasonableness test for a statutory condition requiring that a person consent to personal jurisdiction appropriately balances the legitimate interests of the government against the due process rights of a defendant, and is consistent with the Supreme Court's application of the unconstitutional conditions doctrine in other contexts. In *Koontz v. St. Johns River Water Management District*, the Supreme Court recognized that a government may "offset" the "costs on the public" by conditioning a permit approval on an exaction of property without violating the Takings Clause. 570 U.S. at 605–06. To "accommodate" those types of regulations, the Court will uphold a condition "so long as there is a 'nexus' and 'rough proportionality' between the property that the government demands and the social costs of the applicant's proposal." *Id.*

The PSJVTA satisfies that test. The consent the PSJVTA requires is narrow—limited to *sui generis* foreign entities, applicable only to ATA claims, and in

furtherance of U.S. foreign policy. That limited demand must be seen in light of the federal government's constitutional responsibilities for, and broad authority, over, international relations and the protection of U.S. nationals abroad—government interests reasonably linked to the deemed-consent provisions of the PSJVTA. Congress and the Executive Branch have each long placed limitations on the PLO's operations in the United States, taking into account concerns shared by both branches regarding the PLO's historical support for terrorism. *See, e.g.*, 22 U.S.C. §§ 5201(b), 5202 (reflecting Congress's determination prior to the Oslo Accords that the PLO is "a terrorist organization and a threat to the interests of the United States, its allies, and to international law"). To the extent the PLO is permitted to operate in the United States, it is reasonable and proportional for the United States to condition the PLO's ability to do so on its consent to personal jurisdiction in civil actions under the ATA.

Similarly, the payments that are deemed consent under § 2334(e)(1)(A) bear a reasonable relationship to the waiver of personal jurisdiction. The payments at issue are those that occur after April 18, 2020, and are made to the designee (or family member) of a person who killed or injured a U.S. national, thus implicating the duty of the Executive and Legislative Branches to protect Americans abroad. *See Haig v. Agee*, 453 U.S. 280, 299 (1981); *United States v. Wong Kim Ark*, 169 U.S. 649, 692 (1898); *Durand v. Hollins*, 8 F. Cas. 111, 112 (C.C.S.D.N.Y. 1860) (Nelson, Circuit Justice). And the nexus to opening the courts to vindicate the claims of terrorism victims is obvious and reasonable: Congress has found that such

22

payments by the PA/PLO incentivize the very type of terrorism Congress sought to combat in creating a civil action under the ATA. *See* Taylor Force Act, Pub. L. No. 115-141, § 1002(1) (Findings) (22 U.S.C. § 2378c-1 note). Nothing about haling the PA and PLO into U.S. courts to answer civil suits for any alleged role they played in specific acts of terrorism is "unreasonable" or "unjust," and the PSJVTA therefore does not violate due process.

## Conclusion

The PSJVTA is constitutional.

Dated:   New York, New York              Respectfully submitted,
        July 23, 2021

                                        AUDREY STRAUSS
                                        United States Attorney for the
                                        Southern District of New York
                                          Attorney for the United States

                  By:

                                        BENJAMIN H. TORRANCE
                                        Assistant United States Attorney
                                        86 Chambers Street
                                        New York, New York 10007
                                        Telephone: 212.637.2703
                                        Fax: 212.637.2702
                                        E-mail: benjamin.torrance@usdoj.gov

BRIAN M. BOYNTON
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director

ZACHARY A. AVALLONE
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch