UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, et al.,

                    Plaintiffs,

-against-

PALESTINE LIBERATION
ORGANIZATION, et al.,

                    Defendants.

Case No. 04 Civ. 397 (GBD)

# DEFENDANTS' REPLY TO PLAINTIFFS' BRIEF ADDRESSING THE *FULD* DECISION ON THE PSJVTA

**SQUIRE PATTON BOGGS (US) LLP**

Gassan A. Baloul (GB-4473)
gassan.baloul@squirepb.com
Mitchell R. Berger (MB-4112)
mitchell.berger@squirepb.com
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

*Attorneys for Defendants Palestine Liberation Organization and Palestinian Authority*

-i-

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION .......................................................................................................................1

    A.    Plaintiffs Mischaracterize the Due Process Analysis in *Fuld*, Which Does Not Apply "Strict Scrutiny" or Impose a "Per Se Ban" on Implied Consent. ..................................................................................................................................2

    B.    The Supreme Court's Central Holding in *College Savings Bank* Strongly Supports Judge Furman's Analysis. ........................................................................ 4

    C.    Plaintiffs' Other Cases Do Not Support Their Arguments. ..................................... 7

# **TABLE OF AUTHORITIES**

**Cases**                                                     **Page(s)**

*Aybar v. Aybar*,
   2021 N.Y. LEXIS 2134 (N.Y. Oct. 7, 2021) ................................................................6

*Bank Markazi v. Peterson*,
   136 S. Ct. 1310 (2016) ................................................................................................9

*Brewer v. Williams*,
   430 U.S. 387 (1977) ....................................................................................................9

*Brown v. Lockheed Martin Corp.*,
   814 F.3d 619 (2d Cir. 2016) ............................................................................1, 2, 3, 9

*Burger King v. Rudzewicz*,
   471 U.S. 462 (1985) .................................................................................................7, 8

*Chen v. Dunkin' Brands*,
   954 F.3d 492 (2d Cir. 2020) ........................................................................................3

*City of Boerne v. Flores*,
   521 U.S. 507 (1997) ....................................................................................................9

*Cleland v. Nat'l College of Business*,
   435 U.S. 213 (1978) ....................................................................................................8

*College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*,
   527 U.S. 666 (1999) ............................................................................................ *passim*

*Cooper Tire & Rubber Co. v. McCall*,
   863 S.E.2d 81 (Ga. 2021) ............................................................................................6

*Ford Motor v. Montana Eighth Judicial Dist.*
   141 S. Ct. 1017 (2021) ................................................................................................7

*Koontz v. St. Johns River Water Mgmt. Dist.*,
   570 U.S. 595 (2013) ...............................................................................................9, 10

*Mallory v. Norfolk S. Railway*,
   No. 3 EAP, 2021 Pa. LEXIS 4318, 2021 WL 6067172 (Dec. 22, 2021) ...............6, 10

*Mitchell v. Wisconsin*,
   139 S. Ct. 2525 (2019) ................................................................................................8

*Oregon v. Elstad*,
   470 U.S. 298 (1985) ....................................................................................................4

*Penn. Fire v. Gold Mining and Milling*,
     243 U.S. 93 (1917) ................................................................................................................6

*Perry v. Sindermann*,
     408 U.S. 593 (1972) ..............................................................................................................10

*Schneckloth v. Bustamonte*,
     412 U.S. 218 (1973) ................................................................................................................8

*Waldman v. PLO*,
     835 F.3d 317 (2d Cir. 2016) ........................................................................................1, 2, 5, 9

*Wellness Int'l v. Sharif*,
     575 U.S. 665 (2015) ................................................................................................................9

**Introduction**

Plaintiffs' fundamental critique of *Fuld* astonishingly insists that a mere "rational-basis" "standard of review" governs the constitutionality of the PSJVTA. Pltfs. Supp. Br. (ECF 1050-1), at 1. That argument cannot be squared with: either (i) the Second Circuit's original decision in this case (*Waldman I*) rejecting a mere reasonableness test for jurisdiction; or (ii) the governing "knowing and voluntary" standard for legislatively-imposed "consent" to personal jurisdiction that the Second Circuit reiterated in *Brown* and that the United States and Plaintiffs (previously) acknowledged. Plaintiffs' invitation to depart from *Waldman I* and *Brown* is an invitation to error, particularly when the *Waldman I* mandate continues to bind this Court.

First, in language quoted by Judge Furman, *Waldman I* rejected Plaintiffs' prior jurisdictional-"consent" argument (based on statutory service of process under the ATA), holding that the statute "does not answer the constitutional question of whether due process is satisfied." *Waldman v. PLO*, 835 F.3d 317, 337, 343 (2d Cir. 2016), quoted in *Fuld* opn. at 21-22.[1] There is only one way to read that language (and Judge Furman read it correctly): A rational-basis statute like the ATA cannot alone dictate to courts that due process jurisdictional requirements are satisfied. Something more than legislative say-so is required to satisfy due process. In *Waldman I*, that something-more was "minimum contacts" with the forum sufficient to satisfy the due process purposeful-direction test. *Id.* at 331.

---

[1] In *Waldman I*, Plaintiffs claimed that Defendants "consented to personal jurisdiction under the ATA by appointing an agent to accept process." 835 F.3d at 337. The Second Circuit recognized that "the ATA permitted service of process on the representative of the PLO and PA in Washington," but held "*due process analysis*—considerations of minimum contacts and reasonableness—applies even when federal service-of-process statutes are satisfied. Simply put, the exercise of personal jurisdiction *must comport with constitutional due process principles*." *Id.* at 343 (citation omitted; emphasis added).

Second, when it comes to legislatively-imposed "consent" jurisdiction, the something-more due process requires is "free and voluntary" consent. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 640-41 (2d Cir. 2016). Consistent with *Waldman I*, the Second Circuit in *Brown* held that a rational-basis statute providing "consent" jurisdiction still "would implicate Due Process and other constitutional concerns" (*id.* at 626), which legislative reasonableness alone could not satisfy. Judge Furman correctly understood the import of this language, and quoted it in determining the PSJVTA does not provide "knowing and voluntary" consent. *Fuld* opn. at 17.

*Waldman I* and *Brown* squarely refute Plaintiffs' core argument that the PSJVTA must be constitutional because it has a "rational-basis." Applying those decisions, which Judge Furman recognized are consonant with the Supreme Court's *College Savings Bank* decision, *Fuld* correctly held that the PSJVTA pushes the concept of voluntary consent "well beyond its breaking point." *Fuld* opn. at 28. As *Fuld* established, the PSJVTA is not a legislative magic wand that can create "deemed consent" out of facts the Second Circuit previously found could not constitutionally support jurisdiction under the Due Process Clause.

### A. Plaintiffs Mischaracterize the Due Process Analysis in *Fuld*, Which Does Not Apply "Strict Scrutiny" or Impose a "Per Se Ban" on Implied Consent.

This Court should reject Plaintiffs' strange effort to supplant the "knowing and voluntary" Due Process standard with a "rational-basis" standard that would let Congress rather than the Judiciary "answer the constitutional question of whether due process is satisfied." *Waldman I*, 835 F.3d at 343. Plaintiffs misstate Judge Furman's decision by claiming that it "applied heightened scrutiny" and "a strict level of scrutiny" (ECF 1050-1 at 10, 14) when it should have instead applied the lower, "rational-basis" standard of review (*id.* at 1). *Fuld* did not apply strict scrutiny at all—the opinion did not use the words "strict," "scrutiny," or "heightened." Instead, Judge Furman analyzed whether "deemed consent" under the PSJVTA qualified as "voluntary" consent pursuant

to the Due Process Clause, exactly the analysis the United States and the *Fuld* parties agreed should apply. *Fuld* opn. at 1. It is Plaintiffs who argue the PSVJTA should be analyzed under a standard ("rational-basis" review) that courts have *never* applied to personal-jurisdiction statutes.

Plaintiffs similarly misrepresent the *Fuld* opinion by claiming it created "a *per se* ban on implied consent." ECF 1050-1 at 1. To the contrary, Judge Furman explained that the Supreme Court "blessed the concept of implied consent," which may legitimately arise from a "variety of legal arrangements," such as forum-selection clauses, stipulation, or a parties' appearance without objecting to personal jurisdiction. *Fuld* opn. at 11-12, 23 n.8 (citation omitted). Judge Furman correctly concluded that legislatively-imposed "deemed consent" bears no similarity to those types of valid arrangements, because it is not "voluntary." *Id.* at 14, 27-28.

Other Second Circuit cases support this holding. As Judge Furman explained, *Brown* and *Chen v. Dunkin' Brands*, 954 F.3d 492, 498-99 (2d Cir. 2020), "strongly suggest" that "'deemed consent' jurisdiction is limited by the Due Process Clause" and that Congress may not "deem" conduct to be "consent" that "would otherwise not support personal jurisdiction in the United States." *Fuld* opn. at 18-19 (citation omitted). To pass muster under the constitutional requirement of voluntariness, the predicate conduct in a "deemed consent" statute "would have to be a much closer proxy for actual consent than the predicate conduct at issue is here." *Id.* at 15. In other words, in the absence of the forum contacts required by *Daimler v. Bauman,* 571 U.S. 117 (2014), and *Walden v. Fiore*, 134 S. Ct. 1115 (2014), due process requires conduct "'of such a nature as to justify the fiction' that the party actually consented to submit itself to the jurisdiction of the court." *Fuld* opn. at 14, quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945). No one, not even Plaintiffs, contends that Defendants have actually consented to jurisdiction.

### B. The Supreme Court's Central Holding in *College Savings Bank* Strongly Supports Judge Furman's Analysis.

As Judge Furman recognized, the Supreme Court rejected Plaintiffs' watered-down consent test in *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 679-81 (1999), explaining there is a "fundamental difference" between a knowing and voluntary waiver of jurisdictional defenses, and mere "notice" that Congress intends to *subject* a defendant to suit. Plaintiffs accuse Judge Furman of selectively editing his quotations, arguing that *College Savings Bank* "does not apply here" because its holding limiting legislatively-imposed constructive waiver of constitutional rights is actually dicta and is, in any case, limited to state sovereign immunity. ECF 1050-1 at 11-12.

But even the portion of *College Savings Bank* that Plaintiffs cite refutes their claim, as it states that waivers are "simply unheard of in the context of *other* constitutionally protected privileges." *College Savings Bank*, 527 U.S. at 681 ("constructive" consent is not "commonly associated with the surrender of constitutional rights"). The Supreme Court proceeded to rely on the broader constitutional standard applicable to the waiver of (or consent to waive) other constitutional rights, such as the right to counsel in a criminal case in *Johnson v. Zerbst*, the right to a civil jury trial in *Aetna Ins. v. Kennedy*, and the denial of the due process right to a fair hearing in *Ohio Bell Tel. v. Public Utilities Comm*. *Id*. at 682.[2] The Court also gave an example from another field of law:

> For example, imagine if Congress amended the securities laws to provide with unmistakable clarity that anyone committing fraud in connection with the buying or selling of securities in interstate commerce would not be entitled to a jury in any federal criminal prosecution of such fraud. Would persons engaging in securities

---

[2] The Court could have added to this list the case cited by Plaintiffs on page 10, *Oregon v. Elstad*, 470 U.S. 298, 304 (1985), which held that the consent of an in-custody suspect must be the product of a "free and unconstrained will." Though that standard only applies to custodial statements of criminal defendants, *id.*, it amply demonstrates the Court's policy of granting every reasonable presumption against finding consent or waiver of constitutional rights.

> fraud after the adoption of such an amendment be deemed to have 'constructively waived' their constitutionally protected rights to trial by jury in criminal cases? ….
> The answer, of course, is no.

*Id*. at 681-82.  The Court emphasized that courts should "indulge in every reasonable presumption against waiver of fundamental constitutional rights," because even "speak of the 'constructive waiver' of a constitutional protected privilege'" is "anomalous."  *Id*. at 682 (citation omitted).  "Voluntary" consent means nothing if Congress can "exact constructive waivers of" jurisdictional protections simply "through the exercise of Article I powers."  *Id.* at 683.

The express purpose of these comparisons was to show the Court's approach to constructive consent and "waiver" was consistent across a broad spectrum of constitutional rights—explicitly including due process and jurisdictional defenses.  *College Savings Bank*, 527 U.S. 681-82.  The Court used those comparisons to hold that "[s]tate sovereign immunity, no less than the right to trial by jury in criminal cases, is constitutionally protected."  *Id*.  To allow Congress to create constructive waivers without meaningful consent would "permit Congress to circumvent" existing law to achieve a prohibited result through other means.  *Id*. at 683-84.

Judge Furman correctly applied *College Savings Bank*, holding that "the principles underlying *College Savings Bank* are not specific to the Eleventh Amendment, but rather apply to constitutional rights broadly."  *Fuld* opn. at 15-17.  For the deemed consent provisions of the PSJVTA, "the most that can be said with certainty is that" the PLO and PA have "been put on notice that Congress intends to subject [them] to suits" in the United States.  *Id*., quoting *College Savings Bank*, 527 U.S. at 681.  That is because Congress took conduct that "the Second and D.C. Circuits had held was insufficient to support personal jurisdiction in *Waldman I*, *Livnat*, *Shatsky*, and *Klieman* — and declared that such conduct 'shall be deemed' to be consent."  *Id*. at 14.  Just as *in College Savings* Bank, Judge Furman found that allowing Congress to create consent through

the "sleight of hand" of simply adding "deemed consent" to a jurisdictional statute would mean that "there are no constitutional limits at all" other than the "legislative imagination." *Id*. at 20-21. The *Fuld* opinion carefully follows the path laid out by the Supreme Court in *College Savings Bank* for statutes that rely on fictional consent to create jurisdiction.[3]

If "fair warning" and a "legitimate governmental objective" were all that due process required to subject a defendant to personal jurisdiction, as Plaintiffs claim, then Congress and state legislatures could circumvent modern due-process jurisprudence simply by enacting statutes declaring that the same activities already held *insufficient* to confer jurisdiction under the Due Process Clause "shall be deemed consent" to personal jurisdiction. Plaintiffs offer no response to

---

[3] The century-old registration cases Plaintiffs cite (ECF 1050-1 at 2-4) rely on "reasonable" conditions imposed "as the price of admission." But as the New York Court of Appeals recently held, old consent-registration cases relied on "*Pennoyer v Neff*'s territorial approach, that in-state service on a foreign corporation present in the state afforded general jurisdiction." *Aybar v. Aybar*, 2021 N.Y. LEXIS 2134, *10 (N.Y. Oct. 7, 2021). *Aybar* held that, based on current jurisdictional law, that approach was no longer "reasonable" and therefore the registration statute no longer created personal jurisdiction. *Id*. at 16-17. Plaintiffs also attempt to distinguish *Mallory v. Norfolk S. Railway* as a case involving general jurisdiction. ECF 1050-1 at 6 n.1. But *Mallory* itself explains the analysis is the same for general and specific jurisdiction because coerced-consent renders both equally "superfluous." 2021 Pa. LEXIS 4318, 60 n.19 (Dec. 22, 2021). The PSJVTA is, in any case, more akin to general rather than specific jurisdiction, as it purports to create jurisdiction for any ATA case based on activities (payments in Palestine, and activities or physical presence in the U.S.) bearing no connection to Plaintiffs' specific claims. *See* ECF 1048 at 2. The decision in *Cooper Tire & Rubber Co. v. McCall*, 863 S.E.2d 81 (Ga. 2021), is an outlier among those recent state supreme court cases. Based on a quirk in state law (which precluded the exercise of specific jurisdiction over foreign corporations in state court), *Cooper Tire* held that abandoning its prior interpretation of the business registration statute was unworkable because then out-of-state businesses could not be sued at all. *Id*. at 91-92 (encouraging the legislature to pass a statute that would allow for modern specific and general jurisdiction).

In any case, *Penn. Fire v. Gold Mining and Milling*, 243 U.S. 93 (1917), is not binding authority even if it is still good law. *Penn. Fire* distinguished prior cases (*id*. at 95-96, discussing *Old Wayne Mutual* and *Simon*) that held the voluntary action of doing business in a state could not create jurisdiction where the defendant did not also take the affirmative action to comply with the state statute by appointing an agent for service of process. *Id*. at 96 ("The case of service upon an agent voluntarily appointed was left untouched"). Just as in those cases distinguished by *Penn. Fire*, Defendants took no affirmative actions submitting themselves to personal jurisdiction.

this argument, nor do they cite *even a single case permitting Congress to transform constitutionally-inadequate contacts into consent to jurisdiction.*

### C.     Plaintiffs' Other Cases Do Not Support Their Arguments.

Plaintiffs purport to derive the "fair warning" prong of their test from *Burger King v. Rudzewicz* and *Ford Motor v. Montana Eighth Judicial Dist*—cases that have nothing to do with any federal statute specifying conduct that purportedly effects a consent to personal jurisdiction. (ECF 1050-1 at 1). *Burger King* addressed traditional due-process minimum-contacts analysis, holding that when a defendant "has purposefully directed his activities" at the forum and the claims "arise out of or relate to those activities," the defendant has "fair warning"—given the nature of his contacts with the forum—he may be subject to suit there. 471 U.S. 462, 471-75 (1985) (cleaned up).  Far from sanctioning legislatively-coerced (or "deemed") consent, *Burger King* reiterated that "[t]he Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Id.* at 471-72.  Similarly, *Ford Motor* addressed the requirement that the lawsuit "arise out of or relate to the defendant's contacts with the forum," finding that Ford's in-forum actions of "advertising, selling, and servicing the model of vehicle the suit claims is defective" were sufficiently "related to" plaintiffs' claims to support specific jurisdiction.  141 S. Ct. 1017, 1024, 1026 (2021).  These holdings do not support the exercise of personal jurisdiction here, given the consistent holdings that Defendants lack sufficient contacts with the United States.

While fair warning and non-arbitrariness are obviously elements of due process generally, Plaintiffs cite no authority establishing they are the sole criteria for determining whether the government can effect consent to personal jurisdiction by legislative fiat (ECF 1050-1 at 2)—and for good reason. There is no such rule. The Supreme Court has never held the government can simply declare, in furtherance of some "legitimate" interest (*id.* at 7), that a defendant shall be

- 7 -

deemed to have consented to *jurisdiction* by engaging in certain activities. To the contrary, the Court has consistently held it would *violate* due process to subject a defendant to jurisdiction in a forum "with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King*, 471 U.S. at 471-72.

Plaintiffs place great importance on cases requiring drivers to submit to blood alcohol testing as a *condition* of operating a vehicle in the state (ECF 1050-1 at 8-10), but fail to explain why Supreme Court precedent addressing waiver of jurisdictional defenses (like *College Savings Bank*) is less "analogous" to the PSJVTA than cases addressing vehicle searches related to DUI offenses. In each of those cases (*Missouri v. McNeely*, *Breithaupt v. Abram*, *Birchfield v. North Dakota*, and *South Dakota v. Neville*), the defendant was physically present in the state, enjoying the benefits of its roads, and submitted to a search as a consequence of disobeying the laws applicable to motorists using those roads. These decisions exemplify the type of "reciprocity" that Judge Furman identified as a feature of many "consent" jurisdiction cases. *Fuld* opn. at 28 n.10.

Given that reciprocity, the defendants in those cases unsurprisingly did not challenge the courts' personal jurisdiction. Similarly, *Schneckloth v. Bustamonte*, 412 U.S. 218, 220 (1973), did not involve questions of either jurisdiction or implied consent because the defendant gave repeated, explicit consent to a vehicle search. Moreover, the Supreme Court's most recent word on such Fourth Amendment searches (which Plaintiffs fail to cite) makes clear the Court did *not* rely on a consent theory: "our decisions have not rested on the idea that these laws do what their popular name might seem to suggest—that is, create actual consent to all the searches they authorize." *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2532-33 (2019). Other cases, like *Cleland v. Nat'l College of Business*, 435 U.S. 213 (1978), which involved statutory restrictions on previously-legislated veterans' benefits, have absolutely nothing in common with this case or the PSJVTA.

Plaintiffs therefore offer the wrong constitutional framework when they invite this Court to rely on Fourth Amendment cases to overturn the Second Circuit's due process analysis—both in this case (*Waldman I*) and *Brown*, as applied by Judge Furman in *Fuld*—and hold that due process is not a "fundamental right" even though it is clearly enumerated in the Constitution. *See* ECF 1050-1 at 13-14. As *Waldman I* explained "the exercise of personal jurisdiction must comport with constitutional due process principles." *Waldman I*, 835 F.3d at 343 (citation omitted). Tellingly, Plaintiffs cannot find even a single case applying their "fair-warning and legitimate-objective" test to any consent statute, let alone a statute creating personal jurisdiction.

Finally, Plaintiffs argue Defendants' right to jurisdictional due process should be defined solely by the PSJVTA's factual predicates (ECF 1050-1 at 15), a notion that cannot be squared either with due process or with separation-of-powers. Although Congress maintains inherent authority to pass new substantive law, Congress oversteps its authority when it attempts to "usurp a court's power to interpret and apply the law to the [circumstances] before it" by "direct[ing] the result without altering the legal standards governing the effect of [the specified activity]." *Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1323-24 (2016); *see also City of Boerne v. Flores*, 521 U.S. 507, 536 (1997) (holding Congress cannot override the judiciary's responsibility to "say what the law is"). The PSJVTA violates these basic principles by directing courts that they must *always* find "voluntary" consent to jurisdiction if the PSJVTA's factual predicates are met. *See Wellness Int'l v. Sharif*, 575 U.S. 665, 685 (2015). Determining whether a defendant has waived its constitutional rights is a quintessential judicial question, requiring "application of constitutional principles to the facts as found." *Brewer v. Williams*, 430 U.S. 387, 403 (1977).[4]

---

[4] The PSJVTA also violates the unconstitutional conditions doctrine, which "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). The "predicate

- 9 -

Respectfully submitted,

Squire Patton Boggs (US) LLP

*[signature]*

Gassan A. Baloul (GB-4473)
gassan.baloul@squirepb.com
Mitchell R. Berger (MB-4112)
mitchell.berger@squirepb.com
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

*Attorneys for Defendants Palestine Liberation Organization and Palestinian Authority*

---

for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person to do what it attempted to pressure the person into doing." *Id*. at 612.  In other words, Congress cannot condition Defendants' due process jurisdictional rights on doing whatever Congress says as that "would allow the government to 'produce a result which [it] could not command directly.'"  *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (citation omitted).  In fact, courts have invalided business registration cases on precisely those grounds, holding that State cannot condition to right to do business on (coerced) consent to personal jurisdiction.  *Mallory*, 2021 Pa. LEXIS 4318, *58-60.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2022, a true and correct copy of the foregoing was filed with the Clerk via the Court's CM/ECF system, which will send notice of such filing to all counsel who are registered CM/ECF users.

/s/ *Gassan A. Baloul*
Gassan A. Baloul (GB-4473)