# 15-3135(L)

## 15-3151 (XAP)

## United States Court of Appeals
### FOR THE
## Second Circuit



### MARK I. SOKOLOW, *ET AL.*,

*Plaintiffs-Appellees-Cross-Appellants*

v.

### PALESTINE LIBERATION ORGANIZATION, *ET AL.*,

*Defendants-Appellants-Cross-Appellees*

On Appeal from the United States District Court
for the Southern District of New York, Case No. 2004 Civ. 0397

## OPPOSITION TO MOTION FOR STAY

Gassan A. Baloul
Mitchell R. Berger
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

*Counsel for Defendants-Appellants-
Cross-Appellees*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ................................................................................ 1

PROCEDURAL HISTORY.................................................................... 4

ARGUMENT ....................................................................................... 5

    I.    After Nineteen Months of District Court Proceedings, There Is No Need for Additional Fact-Finding or Legal Analysis. ................................. 5

    II.   This Court Correctly Reinstated the Appeal After the District Court Fulfilled the Terms of the Limited *Jacobson* Remand. ............................. 12

CONCLUSION .................................................................................... 15

CERTIFICATE OF COMPLIANCE...................................................... 16

CERTIFICATE OF SERVICE .............................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
    684 F.3d 36 (2d Cir. 2012) ...............................................................................11

*Carpenter v. Koskinen*,
    692 F. App'x 666 (2d Cir. 2017) ......................................................................13

*EEOC v. N.Y. Times Co.*,
    196 F.3d 72 (2d Cir. 1999) ........................................................................13, 14

*Fuld v. PLO*,
    No. 20-CV-3374, 2022 U.S. Dist. LEXIS 3102 (S.D.N.Y. Jan. 6,
    2022) ..........................................................................................................*passim*

*Pelczar v. Pelczar*,
    833 F. App'x 872 (2d Cir. 2020) ......................................................................11

*Pryaze FM v. FCC*,
    214 F.3d 245 (2d Cir. 2000) .............................................................................14

*Schlafman v. State Univ. of N.Y.*,
    541 F. App'x 91 (2d Cir. 2013) ........................................................................12

*Shatsky v. PLO*,
    No. 18-CV-12355, 2022 U.S. Dist. LEXIS 48721 (S.D.N.Y. Mar.
    18, 2022) ....................................................................................................*passim*

*United States v. Jacobson*,
    15 F.3d 19 (2d Cir. 1994) ...........................................................................*passim*

*United States v. Padilla*,
    No. 96-1662, 1998 U.S. App. LEXIS 23520 (2d Cir. Sept. 18,
    1998) .................................................................................................................13

*Waldman v. PLO*,
    835 F.3d 317 (2d Cir. 2016) ......................................................................1, 4, 7

**Statutes**

Promoting Security and Justice for Victims of Terrorism Act of 2019
    ("PSJVTA), Pub. L. No. 116-94 ...........................................................................1

# INTRODUCTION

This litigation returns to this Court yet again after Judge Daniels, in accord with two other judges of the district court, concluded that the Promoting Security and Justice for Victims of Terrorism Act of 2019 ("PSJVTA"), Pub. L. No. 116-94, cannot provide jurisdiction over Defendants consistent with the Fifth Amendment's Due Process Clause. Those uniform holdings of three district court judges rested on (1) identical allegations concerning both of the PSJVTA's factual predicates, including the "U.S. activities" prong; (2) the same set of jurisdictional-discovery materials from the *Shatsky* case;[1] and (3) the same recognition that "deeming" Defendants to have "consented" to jurisdiction under the PSJVTA by engaging in the <u>same activities</u> this Court previously held <u>insufficient</u> to support jurisdiction in *Waldman* would violate due process. *See Waldman v. PLO*, 835 F.3d 317, 322 (2d Cir. 2016) ("*Waldman I*"). There is no reason, and no basis, to defer this Court's consideration of these issues when Plaintiffs had a full and fair opportunity to present their arguments to Judge Daniels, and Judge Daniels fulfilled the cabined tasks assigned to him in this Court's *Jacobson* remand some 19 months ago.

Plaintiffs' requested hiatus in these proceedings for further district court consideration is unnecessary because—as all three district judges concluded—

---

[1] *See Shatsky v. PLO*, No. 18-CV-12355, 2022 U.S. Dist. LEXIS 48721, *10 (S.D.N.Y. Mar. 18, 2022) ("*Shatsky*").

neither prong of the PSJVTA provides a valid basis for "knowing and voluntary" consent to jurisdiction. As Judge Furman explained in *Fuld*—and as Judge Daniels agreed here—it is not reasonable to infer an intention to submit (*i.e.*, consent) to suit in U.S. court from the "conduct to which Congress attached jurisdictional consequences in the PSJVTA," because that conduct "is not of such a nature as to justify the fiction that Defendants actually consented." *Sokolow* Mem. Decision & Order ("Op."), ECF 1054 (March 10, 2022), at 10 n.4 (quoting *Fuld v. PLO*, No. 20-CV-3374, 2022 U.S. Dist. LEXIS 3102, *19 (S.D.N.Y. Jan. 6, 2022) (internal quotation omitted)). Rather, "Congress simply took conduct in which the PLO and PA had previously engaged—conduct that the Second and D.C. Circuits had held was insufficient to support personal jurisdiction …—and declared that such conduct 'shall be deemed' to be consent." *Fuld*, 2022 U.S. Dist. LEXIS 3102 at *18.

Plaintiffs' claim that "[n]o court has addressed the effects of these [U.S. activities]" (Mot. at 5) ignores *Fuld*'s express holding that the alleged activities are "too thin to support a meaningful inference of consent to jurisdiction in this country. Neither form of conduct, as alleged in this case, even remotely signals approval or acceptance of the Court's jurisdiction." 2022 U.S. Dist. LEXIS 3102 at *19. That holding is fully reflected in Judge Daniels's decision here: "Defendants['] actions in violation of the [PSJVTA] [are] insufficiently related to the litigation to enable the court to exercise constitutionally valid personal jurisdiction over Defendants on the

basis of constructive or implied consent." Op. at 10 & n.4 (citing *Fuld*). Plaintiffs'
claim that Judge Daniels ignored the PSJVTA's "U.S. activities" prong (Mot. at 3)
therefore is also wrong. As all three judges concluded, none of the alleged predicate
activities reflects "knowing and voluntary" consent to personal jurisdiction. *See,
e.g.*, *Shatsky*, 2022 U.S. Dist. LEXIS 48721 at \*14-16 (holding, based on the court's
review of the record compiled during jurisdictional discovery, that "in all events,"
none of the U.S. activities alleged by Plaintiffs was sufficient to "imply a knowing
and voluntary consent to personal jurisdiction consistent with the Due Process
Clause").

Because Judge Daniels's decision fully resolves both the applicability and
(un)constitutionality of the PSJVTA, these issues are now ripe for this Court's
review. This Court's limited *Jacobson* remand did not contemplate that the district
court would issue a final judgment, but rather expressly stated the case would return
to this Court following the district court's consideration of the PSJVTA.
Accordingly, Judge Daniels's decision is not susceptible to post-judgment motions,
like Plaintiffs' "motion for reconsideration." Even so, there is nothing in Plaintiffs'
"motion for reconsideration" below that Plaintiffs did not argue previously to the
district court. Rather, the motion merely rehashes the same arguments already
considered and rejected by Judge Daniels over the past nineteen months.

The Motion to Stay should be denied.

## PROCEDURAL HISTORY

This Court first addressed the constitutionality of exercising personal jurisdiction over Defendants in this case nearly 6 years ago. In *Waldman I*, this Court held that exercising personal jurisdiction over Defendants would violate the Due Process Clause, and remanded to the district court with instructions to dismiss Plaintiffs' claims for lack of personal jurisdiction. *See* 835 F.3d at 322.

Three years later, Congress attempted to undo *Waldman I* (for the second time) by passing the PSJVTA. The PSJVTA mandates that Defendants shall be "deemed" to have "consented" to personal jurisdiction in the United States if they make certain payments in Palestine or engage in any non-exempted activities in the United States. The passage of the PSJVTA ultimately led this Court to remand Plaintiffs' claims to the district court "for the limited purposes" of determining (1) "the applicability of the PSJVTA to this case" and (2) "any issues regarding its application to this case including its constitutionality." Remand Order, ECF 369 (Sept. 8, 2020).

Over the past nineteen months, the district court did just that. Following extensive briefing by the parties and the submission of hundreds of pages of jurisdictional-discovery materials from *Shatsky*, the district court held that (1) the PSJVTA applies to Plaintiffs' claims in this case, and (2) applying the PSJVTA to "deem" that Defendants have "consented" to personal jurisdiction would violate the

Due Process Clause. Because the district court's opinion fully satisfied the terms of this Court's limited *Jacobson* remand, this Court issued an order recalling the mandate and reinstating the appeal two weeks later. *See* Order, ECF 376 (Mar. 24, 2022).

Despite the length of the district court proceedings on remand and this Court's clear intent to reclaim appellate jurisdiction, Plaintiffs subsequently filed a 33-page motion for "reconsideration" in the district court, rehashing and repackaging the same arguments exhaustively litigated by the parties below. Plaintiffs now ask this Court to defer its exercise of appellate jurisdiction while they relitigate the issues already decided by the district court. But there is no need for additional district court proceedings—over the past two years, the district court has already considered and rejected the same arguments and evidence presented in Plaintiffs' motion.

## ARGUMENT

### I. After Nineteen Months of District Court Proceedings, There Is No Need for Additional Fact-Finding or Legal Analysis.

Permitting Plaintiffs to stay this appeal to seek "reconsideration" of the district court's opinion would only further delay this Court's consideration of the important issues highlighted in the remand order. This Court remanded the case to the district court "for the limited purposes of" determining the applicability and constitutionality of the PSJVTA on September 8, 2020 – nearly nineteen months ago. The parties proceeded to file over 180 pages of briefing specifically addressing the scope and

constitutionality of the PSJVTA, and the court allowed a lengthy oral argument on these issues.[2] The district court also took judicial notice of hundreds of pages of additional briefing and deposition transcripts filed in similar cases addressing the "deemed consent" provisions of the PSJVTA.[3] Put simply, the parties exhaustively addressed the issues raised in this Court's remand order for more than a year-and-a-half, and had every opportunity to present their views to the district court.

Based on the extensive record before it, the district court concluded that (1) Plaintiffs "presented sufficient evidence" to trigger application of the PSJVTA, but (2) applying the PSJVTA to find that Defendants "impliedly consented" to personal jurisdiction in this case "would violate the due process clause." Op. 6, 11. As the district court recognized, the conduct relied upon by Plaintiffs to establish "deemed consent" to jurisdiction under the PSJVTA is the same conduct this Court has previously held <u>insufficient</u> to establish personal jurisdiction over Defendants. *Id.* at 11 n.5. Such conduct, the court explained, cannot "support a finding that Defendants have <u>consented</u> to personal jurisdiction," because it is "unrelated" to the

---

[2] *See* Pls. Opening Mem., ECF 1015 (Nov. 12, 2020); Defs. Br., ECF 1021 (Jan. 8, 2021); Pls. Reply Mem., ECF 1022 (Feb. 9, 2021); Oral Argument Tr., ECF 1029 (June 2, 2021); Pls. Post-Argument Letter Br., ECF 1035 (July 6, 2021); US Govt. Br., ECF 1043 (Sept. 7, 2021); Pls. Supp. Br., ECF 1050-1 (Jan. 14, 2022); Defs. Supp. Br., ECF 1052-1 (Jan. 24, 2022).

[3] *See, e.g.*, ECF 1034 (taking judicial notice of Defendants' Brief in *Fuld*); ECF 1039 (submitting over 250 pages of deposition excerpts from *Shatsky*); ECF 1047 (taking judicial notice of Defendants' Response to U.S. Govt. Brief in *Fuld*).

litigation itself and fails to evince any intent to submit to the jurisdiction of the court. *Id.* at 9-11 (discussing the "*Hammond Packing* presumption") (emphasis added). Accordingly, the district court agreed that "the conduct to which Congress attached jurisdictional consequence in the PSJVTA is not 'of such a nature as to justify the fiction' that [d]efendants actually consented to the jurisdiction of the Court." *Id.* at 10 n.4 (quoting *Fuld*, 2022 U.S. Dist. LEXIS 3102 at *19).

Notably, every other court to address the issue has reached the same conclusion—a fact Plaintiffs fail to mention in their motion for a stay. In *Fuld*, Judge Furman held that "the PSJVTA does not constitutionally provide for personal jurisdiction over Defendants in this case" because "Congress simply took conduct in which the PLO and PA had previously engaged—conduct that the Second and D.C. Circuits had held was insufficient to support personal jurisdiction in *Waldman I*, *Livnat*, *Shatsky*, and *Klieman*—and declared that such conduct 'shall be deemed' to be consent." *Fuld*, 2022 U.S. Dist. LEXIS 3012 at *18. Such conduct, the court explained, was "not 'of such nature as to justify the fiction' that Defendants actually consented to the jurisdiction of the Court." *Id.* at *19 (quoting *Int'l Shoe Co. v.*

7

*Washington*, 326 U.S. 310, 318 (1945)).  Inferring consent from the specified conduct would thus "strain the idea of consent beyond its breaking point."[4]  *Id.*

Judge Vyskocil reached the same conclusion in *Shatsky*, explaining that "a court cannot imply a knowing and voluntary consent to personal jurisdiction consistent with the Due Process Clause unless it is reasonable to infer from the defendant's conduct or the legal arrangement 'an intention to submit' to the forum." *Shatsky*, 2022 U.S. Dist. LEXIS 48721 at *15 (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) (plurality opinion)).  "[I]t is not reasonable to infer an intention to consent to suit in U.S. courts from the factual predicates in the PSJVTA," Judge Vyskocil explained, because the specified conduct is merely the same conduct previously "held … insufficient to support personal jurisdiction" under the Due Process Clause.  *Id.* at *15-16.  Confronted with the same jurisdictional allegations,[5] all three district judges—including Judge Daniels in this case—thus concluded that "deeming" Defendants to have "consented" to personal jurisdiction under the PSJVTA would violate due process.

---

[4] Judge Furman's decision in *Fuld*, which addresses the same issues presented in this case, is currently on appeal in this Court.  *See Fuld v. PLO*, Nos. 22-76, 22-496 (2d Cir. 2022).

[5] As noted above, plaintiffs in all three cases have relied upon the same jurisdictional allegations and evidence.  *See, e.g.*, ECF 1039 (entering deposition excerpts from *Shatsky* into the district court record).

In the face of this unanimous authority, Plaintiffs wrongly assert that further district court proceedings are necessary because "[n]o court has addressed" their arguments regarding the PSJVTA's U.S. activities prong. Mot. at 5. That is false. In *Fuld*, the court specifically held that plaintiffs' allegations regarding the same "U.S. activities" at issue here ("consular services," "press conferences," distribution of "informational materials," and efforts to "influence American foreign policy and public opinion") were "too thin to support a meaningful inference of consent to jurisdiction in this country" because they do not "even remotely signal[] approval or acceptance of the Court's jurisdiction." *Fuld*, 2022 U.S. Dist. LEXIS 3102 at *9, 19. "To pass muster, … the predicate conduct would have to be a much closer proxy for actual consent than the predicate conduct at issue is here." *Id.* at *20.

Both the district court below and the *Shatsky* court applied *Fuld*'s reasoning, holding that a court can infer "consent" to jurisdiction only when the specified conduct supports a reasonable inference of approval or acceptance of the court's jurisdiction. *See Shatsky*, 2022 U.S. Dist. LEXIS 48721 at *15 (adopting *Fuld*'s reasoning); Op. 9-11 & nn.4-5 (discussing *Hammond Packing* presumption and citing, *inter alia*, *Fuld*). Because Plaintiffs' allegations regarding Defendants' U.S. activities merely rehash the same conduct already held insufficient to confer jurisdiction in prior cases, they cannot support a reasonable inference that Defendants have "consented" to suit in U.S. court. The district court's conclusion

that it need not make further factual findings on this issue does not reflect the court's failure to consider Plaintiffs' arguments, but rather the court's recognition that such allegations—even if accepted—would not give rise to constitutionally-valid "consent" to jurisdiction.

Plaintiffs are similarly wrong to assert that a stay is necessary to allow the district court to "consider important legal issues … not addressed in the [decision below]" and to assemble "a complete record." Mot. at 1, 5. Plaintiffs' argument that the PSJVTA is constitutional based on the "long historical pedigree" of implied consent statutes is merely a repackaging of the same arguments they previously made, which were considered and rejected by the district court. *Compare* Mot. at 3 (arguing the PSJVTA "fits comfortably within a long line of Supreme Court jurisprudence" validating implied consent statutes), *with* Pls. Opening Mem., ECF 1015 (Nov. 12, 2020) at 7 (arguing "consent to jurisdiction under conditions specified by statute or rule has been an accepted part of the legal landscape for generations"), *and* Pls. Supp. Br., ECF 1050-1 (Jan. 14, 2022) at 2 ("The Supreme Court has evaluated implied consent statutes for reasonableness as long ago as 1877 and as recently as 2016.").

Similarly, although Plaintiffs repeatedly claim further proceedings are necessary to make "a complete record" (Mot. at 4, 6, 7), their motion for reconsideration fails to offer any new evidence. The "appendix" attached to

Plaintiffs' motion consists of nothing more than the same deposition excerpts and exhibits already submitted to the district court seven months ago. *Compare* Pls. App. to Mot. for Recon., ECF 1059 (Mar. 25, 2022), *with* Pls. Supp. Letter, ECF 1039 (Aug. 13, 2021), at 4 (submitting the same materials). Likewise, the types of "U.S. activities" described in Plaintiffs' motion for reconsideration ("consular services," press conferences, etc.) are identical to those asserted in their opening brief, filed with the district court sixteen months ago. *Compare* Pls. Mot. for Recon., ECF 1057 (Mar. 24, 2022) at 21-32, *with* Pls. Opening Mem., ECF 1015 (Nov. 12, 2020) at 16-24.

Rather than presenting any new evidence or a change in controlling authority, Plaintiffs instead merely disagree with the district court's analysis. But as this Court has repeatedly recognized, "[i]t is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted); *see also Pelczar v. Pelczar*, 833 F. App'x 872, 876 (2d Cir. 2020) (summary order) ("A motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.") (cleaned up). Such "thinly-veiled attempts to relitigate" the district court's conclusions are not a proper basis for seeking to stay

this Court's consideration of the same issues on appeal. *Schlafman v. State Univ. of N.Y.*, 541 F. App'x 91, 93 (2d Cir. 2013).

## II. This Court Correctly Reinstated the Appeal After the District Court Fulfilled the Terms of the Limited *Jacobson* Remand.

Plaintiffs similarly miss the mark when they accuse Defendants, this Court, and the Clerk's Office of "gun-jumping" and "gamesmanship" in reinstating the appeal. Mot. at 6, 7. This Court remanded the case to the district court nineteen months ago "for the limited purposes" of determining (1) "the applicability of the PSJVTA to this case" and (2) "if the PSJVTA is determined to apply, any issues regarding its application to this case including its constitutionality." Remand Order, Case No. 15-3135, ECF 369 (Sept. 8, 2020). Citing *United States v. Jacobson,* 15 F.3d 19, 22 (2d Cir. 1994), the panel instructed that "[a]fter the district court has concluded its consideration, the case will be returned to this Court for further proceedings." *Id.*; *see also Jacobson*, 15 F.3d at 22 ("a panel can order that the mandate issue forthwith and contain conditions upon the occurrence of which jurisdiction will be automatically restored to the appellate panel without a new notice of appeal" (emphasis added)).

On March 10, 2022, the district court fulfilled the terms of this Court's limited remand, determining "(1) that the factual predicate for application of the PSJVTA to this case has been established, and (2) that the statute is unconstitutional." Op. 2; *see also id.* at 12 ("The PSJVTA of 2019 is applicable to this case. The statute is

unconstitutional."). The district court's opinion fully satisfied the conditions for restoring appellate jurisdiction under *Jacobson*, as it expressly resolved both of the issues specified in this Court's remand order. *See Jacobson*, 15 F.3d at 22 (explaining appellate jurisdiction is "automatically restored" once the district court fulfills the terms of the remand order); *see also EEOC v. N.Y. Times Co.*, 196 F.3d 72, 77 (2d Cir. 1999) ("jurisdiction was automatically restored to this court" once the district court answered the remanded question); *United States v. Padilla*, No. 96-1662, 1998 U.S. App. LEXIS 23520, at *2 (2d Cir. Sept. 18, 1998) ("[W]e remanded the case to the district court to make additional findings … [The district judge] made the findings, and jurisdiction has been automatically restored to us.").

Accordingly, on March 14, 2022, Defendants informed this Court that Judge Daniels had made both of the determinations requested in the remand order. *See* 3/14/22 Letter, ECF 371-1, at 1; *see also Carpenter v. Koskinen*, 692 F. App'x 666, 667 (2d Cir. 2017) ("The restoration of jurisdiction [under *Jacobson*] will be automatically triggered by a letter from any party seeking review of the district court's actions on remand …"). Contrary to Plaintiffs' allegations of "gun-jumping" and "gamesmanship," Defendants' letter expressly informed the Court of Plaintiffs' stated intention to move for "reconsideration" in the district court. *See* 3/14/22 Letter, ECF 371-1, at 2 n.2. Ten days later, this Court "ORDERED that the mandate is RECALLED and the appeal is REINSTATED." Order, ECF 376 (Mar. 24, 2022).

As this Court properly recognized by recalling the mandate and reinstating the appeal, the district court has fulfilled the terms of this Court's limited remand under *Jacobson*, and the issues are now ripe for this Court's consideration.

Plaintiffs resist this conclusion, asserting—without authority—that Defendants, the Clerk's Office, and this Court were all obligated to wait for them to seek "reconsideration" in the district court before reinstating the appeal. Mot. at 2-3, 5-7. As explained above, that simply is not how a *Jacobson* remand works. When a case is remanded under *Jacobson*, jurisdiction is "automatically restored" to the appellate panel as soon as the district court answers the remanded question. *EEOC v. N.Y. Times*, 196 F.3d at 77. There is no reason why this Court should relinquish its jurisdiction now for the district court to consider that question yet again.

Moreover, although Plaintiffs ask this Court to stay its proceedings so they can seek relief in the district court under "Rules 52(b) and 59(e)" (Mot. at 2), they fail to cite any authority holding such relief is available on a *Jacobson* remand. Plaintiffs mistakenly assume that the district court's order was a final "judgment," triggering the relief available under Rules 52(b) and 59(e). But when a case is remanded for limited purposes under *Jacobson*, it is well-established that the district court lacks authority to enter a new judgment because this Court retains jurisdiction over the original appeal. *See Pryaze FM v. FCC*, 214 F.3d 245, 253 (2d Cir. 2000) (holding district court lacked jurisdiction to enter new injunction on *Jacobson*

remand, after this Court remanded for "limited purpose of supplementing the record with findings of fact and conclusions of law").

In this case, the district court made both of the determinations requested by this Court on remand, but did not enter judgment for either party. Accordingly, Plaintiffs' unsupported assertion that they are entitled to seek "reconsideration" of the district court's order (and their related claim that this Court "normally" stays proceedings pending resolution of such motions, *see* Mot. at 5) provides no basis to delay proceedings in this case, given that this Court already has reacquired its jurisdiction.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs-Appellees' Motion to Stay.

By:  */s/ Gassan A. Baloul*

Gassan A. Baloul
Mitchell R. Berger
SQUIRE PATTON BOGGS (US) LLP
2550 M Street NW
Washington, D.C. 20037
(202) 626-6600

*Counsel for Defendants-Appellants-Cross-Appellees*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27, the undersigned counsel certifies that this document complies as follows:

1.     This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,505 words, excluding the parts exempted by Rule 32(f).

2.     This document complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-Point font.


*/s/ Gassan A. Baloul*
Gassan A. Baloul

*Counsel for Defendants-Appellants-Cross-Appellees*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of April, 2022, the foregoing document

was filed with the Clerk of the Court and served via CM/ECF upon counsel of record

for Plaintiffs-Appellees-Cross-Appellants.


*/s/ Gassan A. Baloul*
Gassan A. Baloul